THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

NICHOLAS FRAZIER                                                    PLAINTIFF

v.                              Case No. 4:20-cv-00434-KGB

WENDY KELLEY, *et al.*                                              DEFENDANTS

<u>ORDER</u>

Plaintiffs Nicholas Frazier, Alvin Hampton, Marvin Kent, Michael Kouri, Jonathan Neeley, Alfred Nickson, Harold "Scott" Otwell, Trinidad Serrato, Robert Stiggers, Victor Williams, John Doe No. 1, Aaron Elrod, Cedric Sims, Price Brown, Torris Richardson, Roderick Wesley, Charles Czarnetzki, Darryl Hussey, Lee Owens, Joseph "Dallas" Head, Wesley "Grant" Bray, Jimmy Little, and John Doe No. 2, individually and on behalf of all others similarly situated (collectively, "plaintiffs") bring this action against defendants Wendy Kelley, Secretary of the Arkansas Department of Corrections ("DOC"); Dexter Payne, Division of Correction Director, Arkansas Department of Corrections ("ADC"); Jerry Bradshaw, Division of Community Correction Director, Arkansas Department of Corrections ("ADCC"); Asa Hutchinson, Governor of Arkansas; Benny Magness, Chairman of Arkansas Board of Corrections ("ABC"); Bobby Glover, Vice Chairman of ABC; John Felts, Member of ABC; William "Dubs" Byers, Member of ABC; Whitney Gass, Member of ABC; Lee Watson, Secretary of ABC; and Dr. Jose Romero, Secretary of the Arkansas Department of Health ("ADH"), all in their official capacities; and Wellpath LLC (collectively, "defendants") (Dkt. Nos. 1; 84). Plaintiffs have styled this action as a 42 U.S.C. § 1983 class action for deliberate indifference in violation of the Eighth Amendment; a 28 U.S.C. § 2241 petition for writ of habeas corpus for deliberate indifference in violation of the Eighth Amendment on behalf of a proposed high-risk subclass; and an action for violation of Title

II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, on behalf of a proposed disability subclass (Dkt. No. 84, ¶¶ 255-83).

## I.    Background

Currently, the Court has before it the letters recently filed by the parties in this matter regarding a discovery dispute (Dkt. Nos. 77; 78).  In those letters, the parties inform the Court of a discovery dispute concerning the interview of nonsupervisory employees of the DOC.  Defense counsel has communicated an objection to plaintiffs' counsels' intent to interview such employees without the presence of opposing counsel.  Defense counsel maintains that plaintiffs' *ex parte* communications with nonsupervisory DOC employees violate Arkansas Rule of Professional Conduct 4.2 ("Rule 4.2").[1]  Plaintiffs' counsel represents that, upon learning of defendants' objection, plaintiffs did not proceed forward with these interviews and will not do so until this discovery dispute is resolved by the Court.

## II.    Analysis

Rule 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law."  Ark. R. Prof. Conduct 4.2(a).  Comment 7 to Rule 4.2 provides the following explanation:

> In the case of a represented organization,[2] this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with

---

[1]    Defendants threaten to "initiate formal disciplinary proceedings" against plaintiffs' counsel for the challenged *ex parte* communications (Dkt. No. 78, at 2).  The Court sees no basis on this record for defendants to threaten such proceedings.  During the hearing, the Court advised all parties that it viewed this as a discovery dispute only, absent further briefing with respect to defendants' request for some other type of disciplinary sanction against plaintiffs' counsel.  No further briefing has been submitted; therefore, the Court resolves only the discovery dispute.

[2]    Plaintiffs' counsel maintains that plaintiffs have not brought suit against the DOC or any organization but rather against the directors and Secretary Kelley in their official capacities (Dkt. No. 77, at 1 n.1).  Plaintiffs' counsel suggests, therefore, that Rule 4.2 is inapplicable since there

the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

*Id.* cmt. 7.

The Rule's purpose is to facilitate "the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter," including interference with the attorney-client relationship and the disclosure of information pertaining to the representation. *Id.* cmt. 1. Generally, Rule 4.2 has been held to apply to the conduct of not only attorneys but also an attorney's nonlawyer agents, including investigative agents. *See Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d 693, 698 (8th Cir. 2003) (explaining that "an attorney is responsible for the misconduct of [the attorney's] nonlawyer employee or associate if the lawyer orders or ratifies the conduct" under South Dakota's equivalent to Rule 4.2); *O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998) (affirming district court determination that government investigative agents were subject to Missouri's equivalent to Rule 4.2).

Courts examining Rule 4.2 have rejected arguments that all employees of an organization are represented parties within the meaning of the Rule simply by virtue of their employment with the represented organization without any initiative on the part of the employee to obtain legal help

---

is no "represented organization" named as a defendant in this action (*Id.*). Defense counsel argues that the official-capacity defendants stand in the shoes of the DOC and that the State agencies are the real parties in interest in this official-capacity lawsuit seeking to hold them liable for alleged violations of constitutional and statutory rights in connection with their response to the COVID-19 pandemic (Dkt. No. 78, at 2). *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) (holding that under § 1983 a judgment against a public servant in her official capacity "imposes liability on the entity that [s]he represents"). For purposes of this dispute, the Court assumes without deciding that Comment 7 of Rule 4.2 applies in this case and considers the official-capacity defendants to be synonymous with the "organization" of the DOC as contemplated by Rule 4.2.

from the organization.  *See e.g., Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147, 1154-55 (D.S.D. 2001), *aff'd sub nom. Midwest Motor Sports*, 347 F.3d at 693; *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 913 F.Supp. 1306, 1317 (N.D. Iowa 1996); *Carter-Herman v. City of Philadelphia,* 897 F. Supp. 899, 903 (E.D. Pa. 1995); *Brown v. St. Joseph Cty.,* 148 F.R.D. 246, 251 (N.D. Ind. 1993).  These courts reason that such "automatic representation" would not serve a useful purpose but instead would impede investigation leading to or following the initiation of a lawsuit.  *See Terra Int'l, Inc.,* 913 F.Supp. at 1317.  Courts also theorize that such a rule would place too much power in the employer to control *ex parte* contacts with opposing counsel in order to stifle criticism or to prevent the revelation of negative information.  *Id.*

Defendants do not suggest "automatic representation" of all DOC employees.  Further, plaintiffs maintain that the employees to be interviewed are nonsupervisory employees, and defendants have no evidence to dispute that these are nonsupervisory employees.  In fact, plaintiffs and defendants agree that these nonsupervisory employees do not supervise, direct, or regularly consult with defendants' lawyers concerning the matter and have no authority to obligate defendants with respect to the matter.

Instead, defendants contend that the employees at issue here qualify as employees "whose act[s] or omission[s] in connection with the matter may be imputed to the organization for purposes of civil or criminal liability."  *See id.* at 1313-14.  Defense counsel argues that, because this is a deliberate indifference case, the acts and omissions of correctional officers and other staff may be imputed to the official-capacity defendants for purposes of civil liability.  Defendants claim that any communications from employees of the named defendant state agents can be used to impute liability up the chain to the defendant state agencies.  Defendants also suggest that, because plaintiffs can cite no controlling case that permits the contemplated *ex parte* communications,

those communications must be prohibited by Rule 4.2. Defendants concede they can cite this Court no controlling case that prohibits the contemplated *ex parte* communications.

Plaintiffs' counsel does not dispute that Rule 4.2 binds parties appearing before this Court; plaintiffs' counsel disputes that interviews of nonsupervisory employees without the presence of opposing counsel in this case violate Rule 4.2. The Court conducted a hearing *via* telephone regarding this discovery dispute on June 30, 2020 (Dkt. No. 81). At that hearing, the Court heard argument from both sides regarding this dispute and took the discovery dispute under advisement (*Id.*).

The Court acknowledges that some courts, outside of Arkansas, have taken the position that Rule 4.2 prohibits contacts with an agent or servant of the represented organization whose statement concerns a matter within the scope of the agency or employment, which statement was made during the existence of the relationship and which is offered against the corporation or organization as an admission. These courts draw a distinction between *ex parte* interviews of employees who are "mere witnesses" to an event for which the corporation or organization is sued and permit holders of factual information to be interviewed. *See Midwest Motor Sports*, 144 F. Supp. 2d at 1156-57.

By *per curiam* order dated March 3, 2005, the Supreme Court of Arkansas adopted the latest version of the Model Rules of Professional Conduct, with minor, non-substantive changes, effective May 1, 2005. *See In re Ark. Bar Ass'n,* No. 03–1049 (Ark. Mar. 3, 2005), *available at* http://courts.state.ar.us/opinions/2005a/20050303/arpc2005.html. Effective May 1, 2005, Arkansas adopted the revised Comment 7 to Rule 4.2, which differs from the prior version in that this revised version omits the prohibition on communications with persons whose statements may constitute an admission by the organization. Thus, as now adopted in Arkansas, Comment 7 to

Rule 4.2 does not interpret the Rule to prohibit communications with a person whose statement may constitute an admission. *See Paris v. Union Pac. R.R. Co.*, 450 F. Supp. 2d 913, 915 (E.D. Ark. 2006). Instead, the sole issue before the Court is whether the nonsupervisory employees to be interviewed are individuals "whose act[s] or omission[s] in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." *Id.* (quoting Rule 4.2, cmt. 7).

It is well settled in § 1983 actions that a supervisor may not generally be held liable for the constitutional violations of a subordinate. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "vicarious liability is inapplicable to . . . § 1983 suits"); *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (holding that, because a supervisor cannot be held vicariously liable for the constitutional violations of a subordinate, a prisoner must "show that the supervisor personally participated in or had direct responsibility for the alleged violations" or "that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts"). Knowledge alone does not render a supervisor liable for deliberate indifference; such an individual "must have also had a 'sufficiently culpable state of mind.'" *Saylor*, 812 F.3d at 644 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

With respect to Title II of the ADA, "[n]either the Supreme Court nor the Eighth Circuit has directly addressed the question of whether a public entity can be held vicariously liable under Title II of the ADA or the R[ehabilitation] A[ct] ["RA"] for the deliberately indifferent conduct of its employees." *Hooper v. City of St. Paul*, No. 17-CV-3442 (PJS/DTS), 2019 WL 4015443, at *10 (D. Minn. Aug. 26, 2019); *see also City & Cty. of San. Fran., Cal. v. Sheehan*, 135 S. Ct. 1765, 1773-74 (2015) (expressly declining to decide whether public entities can be "vicariously liable for money damages for the purposeful or deliberately indifferent conduct of its employees").

6

The Supreme Court has addressed federal statutes that are often interpreted similarly to Title II of the ADA and concluded that vicarious liability does not apply. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (applying Title IX analysis to Title II and RA claims and requiring proof of intentional discrimination for damages); *Davis by Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 646-47 (1999) (holding that a school board could be liable under Title IX for peer-on-peer harassment if certain conditions met, including that the school had actual notice and responded with deliberate indifference); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) (holding that Title IX, which was "modeled after Title VI," did not allow recovery based on vicarious liability, which is significant because the RA and the ADA incorporate Title VI by reference); *but see Miener v. Missouri*, 673 F.2d 969, 978 n.9 (8th Cir. 1982) (declining to interpret Title VI and Title IX consistently or to rely on Title IX when applying the RA).

Several circuits that have examined this issue have determined that a public entity can be held vicariously liable, *see, e.g.*, *United States v. Town of Colo. City*, 935 F.3d 804, 809 (9th Cir. 2019) (noting that "*respondeat superior* liability applies to claims brought pursuant to Title II of the [ADA]" and reaffirming *Duvall v. Cty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001)); *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574-75 (5th Cir. 2002) (holding that a public entity can be held vicariously liable for the actions of its employees under Title II of the ADA and the RA); *Rosen v. Montgomery Cty. Md.*, 121 F.3d 154, 156 n.2 and 157 n.3 (4th Cir. 1997) (same), while other circuits have reached the opposite conclusion or expressly refrained from making such a finding, *see, e.g.*, *Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019) (noting that whether Title II of the ADA permits vicarious liability "is an open question"); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348-49 (11th Cir. 2012) (finding no *respondeat superior* liability and concluding that to hold an entity liable under the RA or Title II of the ADA "a plaintiff must

demonstrate deliberate indifference on the part of an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf and who has actual knowledge of discrimination in the entity's programs and fails adequately to respond" (internal quotations and citations omitted)); *Arthur v. Dist. of Columbia Housing Auth.*, No. 18-cv-2037 (DLF), 2020 WL 1821111, at *11 (D.D.C. Apr. 11, 2020) (noting that the D.C. Circuit has not decided whether Title II of the ADA and § 504 of the RA permit vicarious liability); *Doe v. Bd. of Educ. of City of Chi.*, — F. Supp. 3d — , 2020 WL 1445638 (N.D. Ill. Mar. 24, 2020) (noting that the Seventh Circuit has not decided whether Title II of the ADA and § 504 of the RA permit vicarious liability).

Some district courts in other circuits have permitted a finding of vicarious liability. *See, e.g.*, *Ali v. City of Newark*, Civ. A. No. 15-8374 (JLL), 2018 WL 2175770, at *4-5 (D.N.J. May 11, 2018) (finding that a public entity can be held vicariously liable for the actions of its employees under the ADA and RA); *Morales v. City of New York*, No. 13-cv-7667 (RJS), 2016 WL 4718189, at *7 (S.D.N.Y. Sept. 7, 2016) (same); *Walling v. City of Newport*, Civ. A. No. 2:14-cv-43 (WOB-JGW), 2015 WL 5304271, at *4 (E.D. Ky. Sept. 9, 2015) (same but only addressing the ADA); *Phillips v. N.H. Circuit Court*, Civ. No. 13-cv-313-JL, 2014 WL 495656, at *2 (D.N.H. Feb. 5, 2014) (same); *Doe v. Bd. of Cty. Comm'rs of Craig Cty.*, No. 11-CV-0298-CVE-PJC, 2011 WL 6740285, at *2-4 (N.D. Okla. Dec. 22, 2011) (same but only addressing the ADA); *Hildreth v. Cook Cty.*, No. 08 C 3506, 2010 WL 1656810, at *5 (N.D. Ill. Apr. 23, 2010) (same but only addressing the ADA). Some district courts in other circuits have disallowed a finding of vicarious liability. *See, e.g.*, *Arthur*, 2020 WL 1821111, at *11 (noting that "entities cannot be vicariously liable on a *respondeat superior* theory under Title VI [and] the same principle applies to Title II ADA or [RA] claims . . . . , the plain text of Title II of the ADA does not provide for vicarious

liability, in contrast to other provisions in the ADA . . . . , [and] the Supreme Court's logic in *Gebser* . . . suggests that the [RA] does not permit vicarious liability" and therefore concluding that vicarious liability does not apply to Title II claims); *Lake v. Bd. of Cty. Comm'rs of Clark Cty., Ohio*, No. 3:18-cv-143, 2020 WL 1164778, at *5-6 (S.D. Ohio Mar. 11, 2020) (concluding that "a public entity cannot be held liable under Title II of the ADA" via vicarious liability); *Ravenna v. Vill. of Skokie*, 388 F. Supp. 3d 999, 1008 (N.D. Ill. 2019) (rejecting vicarious liability and holding that in order to succeed on Title II claims a plaintiff must prove that an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on plaintiff's behalf had actual knowledge of the alleged discrimination and failed to adequately respond) *Jones v. City of Detroit*, No. 17-cv-11744, 2019 WL 2355377, at *6 (E.D. Mich. June 4, 2019) ("[T]he Supreme Court's decision to prohibit *respondeat superior* liability under Title IX extends to Title VI, which in turn extends to the [RA] and the ADA because those statutes incorporate the remedies of Title VI by reference."); *Manuel v. City of Bangor*, No. 09-CV-339-B-W, 2009 WL 3398489, at *3 (D. Me. Oct. 21, 2009) ("[Plaintiffs'] quest to recover money damages from the City of Bangor under Title II [of the ADA] . . . cannot succeed without evidence that persons having supervisory oversight within the relevant city department had notice of the Manuels' allegations of discriminatory treatment yet failed to take reasonable measures to ensure compliance with federal law.  Liability . . . cannot be imputed to institutions based merely on the actions of lower-level employees"); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007) ("Liability under Title VI," which is interpreted similarly to Title II of the ADA, "cannot be imputed to institutions based on the actions of their employees").

At least one district court in the Eighth Circuit has concluded that vicarious liability should apply in the Title II context.  *See A.K.B. By & Through Silva v. Indep. Sch. Dist. 194*, No. 19-cv-

2421 (SRN/KMM), 2020 WL 1470971, at *9-12 (D. Minn. Mar. 26, 2020) (citing *Miener* and other circuit court decisions in concluding that "vicarious liability exists under the ADA and Rehab Act without deferring to Title IX"). At least one district court in the Eighth Circuit has disallowed a finding of vicarious liability and determined that, "while Title I of the ADA explicitly contemplates vicarious liability for employers, Title II of the ADA does not contemplate vicarious liability for public entities." *Hooper*, 2019 WL 4015443, at *10.

The Court notes that the vast majority of these legal authorities involved claims by plaintiffs for money damages pursuant to Title II of the ADA. Here, plaintiffs seek only injunctive relief in the form of reasonable accommodations for a proposed disability subclass (Dkt. No. 84, ¶¶ 267-83). Additionally, the Court underscores the conflicting legal authorities cited above; the reality that most of these legal authorities concern money damages in contrast to the equitable relief sought by plaintiffs in this action; the lack of guidance from either the Supreme Court or the Eighth Circuit; the fact that plaintiffs do not allege specifically in their most recently amended complaint that vicarious liability exists; the fact that defendants maintain emphatically that vicarious liability does not exist;[3] and the lack of briefing from the parties on this issue. This combination of factors highlights the extent to which the existence of vicarious liability under Title II of the ADA remains an unanswered question in the Eighth Circuit. Because this question of

---

[3] The Court reminds defendants that defendants have taken the position in this litigation that plaintiffs "cannot get injunctive relief against Defendants because some unit-level correctional officers occasionally fail to follow Defendants' policies" (Dkt. No. 64, at 3) and that lower-level DOC employees' "non-implementation" of the official-capacity defendants' COVID-19 policies "is irrelevant to whether defendants are deliberately indifferent" (Dkt. No. 63, at 258). If the actions or inactions of nonsupervisory DOC employees are "irrelevant" to the matter of defendants' alleged deliberate indifference, which defendants have argued to this Court they are, the Court remains wary of definitively concluding that such actions or inactions could impute civil liability to the named defendants in this matter in a way that *ex parte* communications with these unrepresented, nonsupervisory employees violates Rule 4.2.

vicarious liability remains unanswered, the Court cannot foreclose at this stage of the litigation and on the record before it the possibility that nonsupervisory DOC employees are individuals "whose act[s] or omission[s] in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." Ark. R. Prof. Conduct 4.2, cmt. 7. For that reason and at this stage of the litigation, the Court determines the better course is to construe Rule 4.2 as prohibiting plaintiffs' *ex parte* communications with nonsupervisory DOC employees.

Accordingly, the Court concludes that plaintiffs may not proceed with *ex parte* communications with nonsupervisory DOC employees at this time. To the extent any party wishes to brief further the possibility of vicarious liability under Title II of the ADA and how the existence or absence of such liability would bear upon plaintiffs' *ex parte* communications with nonsupervisory DOC employees, the Court welcomes such briefing.

So ordered this the 4th day of August 2020.

_____
Kristine G. Baker
United States District Judge

11