# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF ARKANSAS, CENTRAL DIVISION

| | | |
|---|---|---|
| FRAZIER, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| GRAVES, *et al.* | ) | Hon. Kristine G. Baker |
| | ) | |
| Defendants. | ) | Case No. 4:20-cv-434 (KGB) |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION REQUIRING DEFENDANTS TO TAKE CERTAIN STEPS IN LIGHT OF THE CURRENT SURGE IN COVID CASES CAUSED BY OMICRON

Plaintiffs, by their undersigned counsel, respectfully submit this emergency motion in light of the observations made last week by Homer Venters, M.D., M.S., during his inspection of four Arkansas correctional facilities and the rapid spread of the new and highly-contagious COVID-19 variant, Omicron, across the United States and in Arkansas. Plaintiffs respectfully request that the Court schedule a conference to discuss this emergency motion with the parties at its earliest opportunity.

As set forth in Dr. Venters' declaration, filed herewith, he observed serious deficiencies in Defendants' response to COVID-19 at all four facilities that place the lives of incarcerated persons in Arkansas prisons at unreasonable risk from COVID-19. Dr. Venters intends to submit a full report of his findings in January 2022. However, in just the five days since his inspection, a new and highly transmissible variant of COVID-19, Omicron, has swept through the United States, and now Arkansas, causing a tremendous spike in infections. According to the CDC, Omicron is now the dominant strain in the United States, already making up approximately 73 percent of new

1

COVID-19 cases, even though the first case of it was detected in the United Since only three weeks ago.  *See* Mike Stobbe, *Omicron sweeps across nation, now 73% of new US COVID cases*, AP News (Dec. 21, 2021), https://apnews.com/article/omicron-majority-us-cases-833001ef99862bd6ac17935f65c896cf.



*See* Ryan Huddle et al., *These 5 charts show how fast Omicron is spreading*, Boston Globe (Dec. 21, 2021), https://www.bostonglobe.com/2021/12/21/nation/these-5-charts-show-how-fast-omicron-is-spreading/?s_campaign=8315.  This rapid surge in COVID-19 cases fueled by Omicron has not spared Arkansas.  *See* Andy Davis, *Arkansas official predicts omicron "surge" as uptick in covid cases continues*, Arkansas Democrat-Gazette (Dec. 20, 2021), https://www.arkansasonline.com/news/2021/dec/20/arkansas-official-predicts-omicron-surge-as-uptick/?bcsubid=9514116e-cdf8-4a0e-b6fb-590d7b36e891&pbdialog=reg-wall-login-created-ao.  Yesterday, Governor Asa Hutchinson warned: "It is clear that Omicron is in our state, it is

spreading rapidly, and it will define our prevention efforts for the coming months." Governor Hutchinson's Weekly Media Briefing, at 10:42, YouTube (Dec. 21, 2021), https://www.youtube.com/watch?v=ATmU3NU1Hyw.



As the chart above reflects, as of yesterday, Omicron already makes up approximately 92% of cases in Arkansas.  *See* Ryan Huddle et al., *These 5 charts show how fast Omicron is spreading*, Boston Globe (Dec. 21, 2021), https://www.bostonglobe.com/2021/12/21/nation/these-5-charts-show-how-fast-omicron-is-spreading/?s_campaign=8315.  Therefore, all evidence suggests that Omicron soon will enter the Arkansas prisons—if it has not already done so—and, once it does, it will spread rapidly among the incarcerated population and staff, much more so than the prior variants.  *See* Stephanie Nebehay & Emma Farge, *WHO Sounds Warning Over Fast-Spreading*

*Omicron*, Reuters (Dec. 20, 2021), https://www.reuters.com/world/omicron-spreading-infecting-vaccinated-who-2021-12-20/ (quoting WHO director-general as stating that "[t]here is now consistent evidence that Omicron is spreading significantly faster than the Delta variant").

During his inspection of the four facilities, which included key areas such as the intake/receiving area, housing area, quarantine area, and any medical clinic or infirmary, Dr. Venters found that Defendants have exhibited some strengths in responding to COVID-19 that could help them respond to Omicron. Defendants have made vaccines available to the incarcerated population, worked to track the timing of second shots and boosters, and—in large part due to Wellpath's implementation of an electronic medical record system before the pandemic—have a system to identify the vaccination status of incoming incarcerated persons. Defendants also have a quarantine and testing system for newly admitted and potentially exposed incarcerated persons that is consistent with CDC guidelines.

Nonetheless, Dr. Venters found several serious deficiencies in Defendants' COVID-19 response that leave them ill-prepared during Omicron's surge to detect new cases as people enter the units, to prevent the spread of cases once inside the units, and to provide adequate surveillance or care for high-risk persons who are exposed to or have COVID-19. For instance, not all units conduct a symptom check of people entering the units; there is no higher-level cleaning and disinfecting of sites when a COVID-19 case is detected; and there is rarely, if ever, a daily symptom check among people in quarantine or medical isolation settings, including among high-risk people. Even more troubling, there is no active attempt to identify and protect the high-risk individuals in the prisons, nor any difference in how high-risk individuals are monitored in quarantine or medical isolation settings. And now, unfortunately, preliminary studies indicate that the Johnson & Johnson vaccine—the one predominantly administered in Arkansas prisons at this

4

time—provides little, if any, protection against Omicron.[1] Individuals, and especially high-risk individuals, who have received the Johnson & Johnson vaccine need urgently to be given the Moderna or Pfizer booster.

These deficiencies are especially worrisome today, as Omicron has brought an increase in positive tests that eclipses any prior wave and is likely to overwhelm health and hospital systems in the coming weeks. As Dr. Venters explains, when health and hospital systems become overwhelmed—something that is especially likely for Arkansas' already-understaffed correctional health system—a primary objective should be to identify high-risk patients, create and maintain active lists of these individuals, and prioritize monitoring of these individuals to prevent their needless severe illness or death. Venters Decl. ¶¶ 7, 18, 27. Preparing these lists is also essential so that Wellpath and the DOC can estimate the need for the just-approved COVID-19 oral treatment, Paxlovid. At the same time, other steps must also be taken to try to stop Omicron from getting into the prison and then preventing its spread once inside the prison.

With the understanding that Defendants have limited time to respond to Omicron, Dr. Venters has identified the most urgent steps—detailed further in paragraphs 25-28 of his declaration—that Defendants must take immediately to avoid preventable serious illnesses and deaths among its incarcerated population and staff in the coming weeks. The following steps that Dr. Venters has identified are all within Defendants' current capabilities and, if immediately implemented, can save lives.

1. When two or more cases have been detected among incarcerated persons or staff in a unit in a fourteen-day (14) period, enhanced measures at the front gate of each unit must be

---

[1] *See* E. Cameroni, C. Saliba *et al.*, *Broadly neutralizing antibodies overcome SARS-Cov-2 Omicron antigenic shift*, bioRxiv (Dec. 14, 2021), https://www.biorxiv.org/content/10.1101/2021.12.12.472269v1.full (finding that the Johnson & Johnson COVID-19 vaccine produces little to no antibodies against Omicron).

adopted, requiring every person entering the unit to take a rapid test before entry; asking every person entering the unit whether he or she has any COVID-19 symptoms; and using accurate temperature instruments to read the temperature of every person before entry.

2. When two or more cases have been detected among incarcerated persons or staff in a unit in a fourteen-day (14) period, KN95 masks must be provided to all staff and incarcerated people, and wearing them must be mandated.

3. Wellpath's electronic medical records must be used to identify all high-risk incarcerated persons, and to create and maintain updated lists of these persons. Staff must hold in-person counseling sessions with any individual on the list who is not vaccinated or has not received a booster. At this time, in light of preliminary studies showing that J&J vaccine provides little—if any—protection against Omicron, the DOC and Wellpath should exclusively provide the Pfizer or Moderna vaccine.

4. The nursing staff must conduct a daily vital signs and symptom check of any high-risk individual housed in a quarantine area.

5. The nursing assessment for patients in quarantine must be modified to include whether the person is high risk and by lowering the threshold to take action steps (*e.g.*, contacting a doctor, transferring to hospital) for high-risk patients.

6. To help slow the spread of Omicron inside the units, every person who works outside his housing area should be asked about COVID-19 symptoms before the commencement of a shift; a plan should be created and implemented for enhanced cleaning of any site where a person with known COVID-19 worked or lived; the provision of meals should not result in close contact between different housing areas; and sick call requests should be reviewed

      at the end of each day to ensure expedited response to any one with potential COVID-19-related symptoms.

It is imperative that Defendants urgently take the steps that Dr. Venters details in his declaration to stop avoidable illness and death among the incarcerated population during Omicron's surge.

      Plaintiffs urge the Court to grant emergency relief in the limited form outlined in Dr. Venters' declaration. When determining whether to grant a preliminary injunction, courts are mandated to consider: (1) the threat of irreparable harm to the movant; (2) the movant's likelihood of success on the merits; (3) the balance between the harm to the movant and the injury that granting an injunction would cause other interested parties; and (4) the public interest. *See Kroupa v. Nielson*, 731 F.3d 813, 818 (8th Cir. 2013) (citing *Dataphase Sys. Inc. v. CL Sys.*, 640 F.2d 109, 113 (8th Cir. 1981)).

      Injunctive relief is clearly warranted here. *See Planned Parenthood of Wis. v. Van Hollen*, 963 F. Supp. 2d 858, 864 (W.D. Wis. 2013) ("appl[ying] a sliding scale in weighing whether preliminary relief is warranted"). First, Plaintiffs face the quintessential irreparable harm: the potential for prolonged illness and death due to this new variant. *See Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 961 (8th Cir. 1995) ("It is hard to imagine a greater harm than losing a chance for potentially life-saving medical treatment."); *Harris v. Blue Cross Blue Shield*, 995 F.2d 877, 879 (8th Cir. 1993) ("entertain[ing] no question but that irreparable injury existed at the time the district court ordered the preliminary injunction . . . to prevent the denial of coverage for treatment of a life threatening illness"). Second, Plaintiffs are likely to succeed on the merits of their claims because Defendants are (and have been) aware of the substantial risk posed by COVID-19—and now by this new variant—and yet have consistently refused to take the necessary, but simple, steps outlined by Dr. Venters to protect Plaintiffs and avoid preventable

illness and deaths in the correctional facilities. *See Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009) ("[T]he more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."). It is Defendants' responsibility under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The deliberate-indifference standard may be satisfied when officials respond to an infectious disease "outbreak with a series of negligent and reckless actions." *DeGidio v. Pung*, 920 F.2d 525, 533 (8th Cir. 1990) (continuing failure by prison officials to institute a system to prevent the spread of tuberculosis violated the Eighth Amendment). Third, the public interest weighs strongly in Plaintiffs' favor because—as has become evident over the past year-and-a-half—allowing Omicron to spread through Arkansas prisons also threatens to harm communities outside the prisons' walls and impose additional stress on the soon-to-be overwhelmed health system. Finally, the urgent steps that Dr. Venters recommends are basic preventive measures that the State and Wellpath have the tools to implement. Any burden—financial or otherwise—on the Defendants is substantially outweighed by the imminent risk to Plaintiffs' health and safety. The equities, therefore, weigh heavily in Plaintiffs' favor. *See Nemnich v. Strangler*, No. 91-4517-CV-C-5, 1992 WL 178963, at *3 (W.D. Mo. Jan. 7, 1992) ("harm to the plaintiffs' [lives] and health clearly outweighs any fiscal harm the state may suffer").

Once a plaintiff has demonstrated entitlement to preliminary relief, the Court has broad power to fashion equitable remedies to address constitutional violations in prisons. *See Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978). While "[c]ourts must be sensitive to the State's interest[s]," they "must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners [and] . . . may not allow constitutional violations to continue simply because a

remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 563 U.S. 493, 511 (2011) (internal quotations omitted). Most certainly, "[a] court need not wait until . . . institutional health care deficiencies reach catastrophic proportions in order to exercise its . . . injunctive powers." *Cody v. Hillard*, 599 F. Supp. 1025, 1055 (D.S.D. 1984), *aff'd*, 799 F.2d 447 (8th Cir. 1986), *on reh'g*, 830 F.2d 912 (8th Cir. 1987).

**WHEREFORE**, Plaintiffs respectfully request that the Court schedule a conference with the parties to discuss this motion at the earliest opportunity, and enter an Order requiring Defendants immediately to take the steps set forth in Dr. Venters' declaration in paragraphs 25-28, and grant such other and further relief as the Court deems just and proper.

Dated: December 22, 2021

    Respectfully submitted,

    **SQUIRE PATTON BOGGS (US) LLP**

    By:    /s/Victor Genecin
            Victor Genecin
            George H. Kendall
            Jenay Nurse
            Corrine Irish
            Nicola Cohen
    1211 Avenue of the Americas
    New York, NY 10036
    (212) 872-9800

    **NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**

    By:    Christopher Kemmitt
            Ajmel Quereshi
    700 14th Street NW, Suite 600
    Washington, DC 20005
    (202) 216-5573
    *and*
            Samuel Spital

Jin Hee Lee
Amber Koonce
Adam Murphy
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

**INITIATIVE FOR A JUST SOCIETY**

By: Omavi Shukur
435 West 116th Street Rm. 605
New York, NY 10027
omavi.shukur@law.columbia.edu
(212) 854-2619

**DISABILITY RIGHTS ARKANSAS**

By: Thomas Nichols
400 West Capitol Ave, Suite 1200
Little Rock, AR 72201
(501) 296-1775

**ARKANSAS CIVIL LIBERTIES UNION FOUNDATION, INC.**

By: Sarah Everett
904 W. 2nd Street, Suite One
Little Rock, AR 72202
(501) 374-2660

*Attorneys for Plaintiffs and the Putative Classes*

Jin Hee Lee
Amber Koonce
Adam Murphy
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

**INITIATIVE FOR A JUST SOCIETY**

By: Omavi Shukur
435 West 116th Street Rm. 605
New York, NY 10027
omavi.shukur@law.columbia.edu
(212) 854-2619

**DISABILITY RIGHTS ARKANSAS**

By: Thomas Nichols
400 West Capitol Ave, Suite 1200
Little Rock, AR 72201
(501) 296-1775

**ARKANSAS CIVIL LIBERTIES UNION FOUNDATION, INC.**

By: Sarah Everett
904 W. 2nd Street, Suite One
Little Rock, AR 72202
(501) 374-2660

*Attorneys for Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I certify that on December 22, 2021, I filed the foregoing document electronically via the Court's CM/ECF system, which will send a copy to all counsel of record.

<u>/s/ Nicola Cohen</u>
Nicola Cohen
Squire Patton Boggs (US) LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 872-9800